UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER H., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 5:20-cv-02503-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On December 2, 2020, plaintiff Sylvester H. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of his application for a period of disability and disability insurance benefits ("DIB"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered plaintiff's testimony, and (2) whether the

1

ALJ erred by failing to account for plaintiff's nonsevere mental impairments in determining his residual functional capacity ("RFC"). Plaintiff's Memorandum in Support of Plaintiff's Brief ("P. Mem.") at 6-20; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 5-12.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated plaintiff's subjective symptom testimony, but failed to properly consider plaintiff's mental impairments in formulating the RFC. The court therefore reverses the decision of the Commissioner denying benefits and remands the matter for further administrative action consistent with this decision.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 59 years old on the alleged disability onset date, has a college education. AR at 74, 245. Plaintiff has past relevant work as an inspector for government properties and as an insurance and benefits clerk. AR at 61.

On September 14, 2015, plaintiff filed an application for a period of disability and DIB, alleging an onset date of July 1, 2012. AR at 74. Plaintiff claimed he suffered from mid to lower back pain, bilateral shoulders, wrists, and hand pain, depression, and high blood pressure. AR at 74-75. Plaintiff's application was initially denied on May 18, 2016, and upon reconsideration on August 17, 2016. AR at 109, 111, 115.

Plaintiff requested and appeared at a hearing on September 25, 2019, but he requested a representative, resulting in the hearing's postponement. AR at 65-73. Subsequently, plaintiff requested another hearing, which took place on February 20, 2020. AR at 37. Plaintiff, represented by counsel, appeared and testified at the hearing. AR at 40-59. The ALJ also heard testimony from Freeman Leeth, a vocational expert. AR at 59-64. The ALJ denied plaintiff's claim for benefits on

April 10, 2020.  AR at 30.

Applying the well-established five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had engaged in substantial gainful activity from his alleged onset date through October 2014.  AR at 17.  However, there was a continuous twelve month period during which plaintiff did not engage in substantial gainful activity, and the remaining findings of the ALJ address that period.  *Id.*

At step two, the ALJ found plaintiff suffered from the following severe impairments: lumbar degenerative disc disease and sprain/strain; cervical degenerative disc disease; thoracic degenerative disc disease; bilateral shoulder derangement; osteoarthritis; rotator cuff syndrome, and sprain/strain; bilateral carpal tunnel syndrome and sprain/strain of hands and wrists; and obesity.  AR at 17-18.  The ALJ found plaintiff's mental impairments of anxiety disorder, depressive disorder, and post-traumatic stress disorder to be nonsevere because they did not cause more than minimal limitation in the plaintiff's ability to perform basic mental work activities.  AR at 19.

At step three, the ALJ found that through the date last insured, plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR at 22.

The ALJ then assessed plaintiff's RFC,[1] and determined he had the ability to perform:

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

light work as defined in 20 CFR 404.1567(b) except he could lift
and/or carry 20 pounds occasionally and 10 pounds frequently; stand
and/or walk for a total of six hours in an eight-hour workday; sit for a
total of six hours in an eight-hour workday; occasionally climb ramps
and stairs, balance, stoop, kneel, crouch, and crawl; could never climb
ropes, ladders, and scaffolds; could frequently reach with the bilateral
upper extremities; could frequently handle and finger with the right
upper extremity; and should avoid concentrated exposure to extreme
cold and hazardous conditions.

AR at 23.

At step four, the ALJ determined plaintiff was capable of performing his past relevant work as an inspector, government property, and as an insurance and benefits clerk. AR at 29-30. The ALJ accordingly concluded plaintiff was not under a disability, as defined in the Social Security Act, from July 1, 2012, the alleged onset date, through March 31, 2019, the date last insured. AR at 30.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review on October 7, 2020. AR at 1. Accordingly, the ALJ's decision became the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the SSA must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th

Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted). Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (cleaned up). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (cleaned up).

## IV.

## DISCUSSION

### A.  The ALJ's Did Not Err in Assessing Plaintiff's Symptom Testimony

Plaintiff argues the ALJ failed to articulate legally sufficient reasons for discounting his pain and limitation testimony. P. Mem. at 6-14. Specifically, plaintiff argues his testimony is consistent with the record and that nothing in the record reduces its credibility. P. Mem. at 13.

#### 1. Legal Standard

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. SSR 16-3p rescinded and superseded SSR 96-7p and applies to decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of

the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen v. Chater*, 80

F.3d, 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Id.* at 1283-84.

### 2. **Analysis**

At the first step for evaluating a claimant's symptom testimony, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 24. At the second step, the ALJ found plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not entirely consistent with the medical evidence and other evidence in the record. AR at 25. Because plaintiff cleared step one and the ALJ found no evidence of malingering, the ALJ's reasons for discounting plaintiff's testimony had to be specific, clear, convincing, and supported by substantial evidence. Plaintiff argues the ALJ did not provide such reasons.

Plaintiff's testimony consists largely of his testimony at his February 2020 hearing and in his November 2015 Function Report. As the ALJ recounted, plaintiff testified that he has problems with his lower back, right shoulder, wrists, and neck. AR at 24, 44-59. He testified he can sit for up to 30 minutes, stand up to 30 minutes, walk for about 30 minutes, lift about 20 pounds, and carry about 10 pounds. AR at 24, 50. He testified he cannot lift 20 pounds for one-third of a workday. AR at 24. He stated that pain in his back, shoulder, and neck increases when he sits for more than about 20 minutes. AR at 24, 45. He testified he needs about three breaks during a 30 minute walk due to back pain. AR at 24, 51. He testified he has problems using his hands such that he is unable to type and drops items. AR at 24, 50, 59. He said he cannot reach overhead, and that he can reach in front of himself for less than three hours a day. AR at 24, 54, 57-58. He reported his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit,

kneel, climb stairs, complete tasks, and use his hands. AR at 24, 263-64, 268. He reported he uses a cane. AR at 24, 46, 269. He stated the pain improves when he takes medication. AR at 24, 45. He testified he has braces for his back and right wrist. AR at 24, 46, 51, 269. He stated pain injections in his back, shoulder, and wrists help his symptoms. AR at 24, 46. He testified he declined surgery on his back because he thought medication would suffice. AR at 24, 53.

The first reason the ALJ gives for discounting plaintiff's symptom testimony is that his allegations of debilitating symptoms were not entirely supported by the medical evidence in the record. AR at 25-27. The ALJ gave any overview of plaintiff's medical records starting in 2014, which reflect a number of positive examination findings. *Id.* But as the ALJ noted, the records also show improvement over time. For example, at a March 23, 2016 examination, plaintiff's was observed to ambulate freely with normal gate and no use of an assistive device. AR at 26, 481. Straight leg tests were negative, examination of the spine and hips revealed largely normal findings, and although there was significant tenderness to palpation at the lumbosacral junction, palpation of the cervical and thoracic spine and of the hips elicited no tenderness. AR at 26, 482. Examination of the shoulders, elbows, wrists, and hands were likewise largely normal with no significant tenderness. *Id.* Records from plaintiff's Medicare Wellness exam on June 20, 2018 show his general appearance was "alert, well appearing, and in no distress," his range of motion of extremities was grossly normal, and he had normal gait and normal posture. AR at 27, 609-10. At a March 28, 2019 examination by Dr. Enacio Hunt, plaintiff's back pain was found to be stable and controlled with naproxen, with 5/5 muscle strength throughout. AR at 27, 642. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling

effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Lack of support in the medical records for the extent of limitations claimed by plaintiff was a clear and convincing reason to discount his testimony here.

      Second, the ALJ noted that plaintiff's own allegations regarding his symptoms were not entirely consistent. AR at 27. The ALJ pointed out that plaintiff responded "yes" to the question, "Do you finish what you start? (For example: a conversation, chores, reading, watching a movie)" but also indicated that his condition affects his ability to complete tasks. *Id.* (citing AR at 268). This is not in fact a clear inconsistency, since one may be able to finish a conversation or a movie and still be unable to complete certain physical tasks due to pain. Likewise unconvincing is another example given by the ALJ, that while plaintiff testified he graduated from college, he told a consulting psychologist he completed eleventh grade and a GED, and told a Veterans Affairs ("VA") interviewer he completed tenth grade and a GED. AR at 27 (citing AR at 476, 520). Regardless of whether these are in fact inconsistent statements, they have little to do with the testimony at issue here. *See* SSR 16-3p ("subjective symptom evaluation is not an examination of an individual's character").

      Nonetheless, the ALJ also pointed to statements by plaintiff within the medical records that are inconsistent with the extent of his claimed symptoms and limitations. For example, after a November 2015 examination by an orthopedic surgeon reflected significant findings, at a follow up examination on March 29, 2016, plaintiff reported "improved function with medications" and the ability to "walk, stand, sit and do chores." AR at 26, 487. Likewise, at his March 28, 2019 examination with Dr. Hunt, plaintiff had "no complaints" and reported his back pain was well controlled with NSAIDs and he had been off tramadol for over a year. AR at 27, 641. These inconsistencies with plaintiff's testimony were a clear and convincing reason to discount it. *See Celaya v. Halter*, 332 F.3d 1177, 1181

(9th Cir. 2003) (ALJ's finding that symptoms were controlled was clear and convincing reason to reject plaintiff's testimony). Relatedly, that plaintiff was able to control his pain with conservative medication treatment with an NSAID such as naproxen is another clear and convincing reason to discount plaintiff's testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted).

      Plaintiff argues the ALJ failed to consider his testimony in conjunction with the testimony of his VA doctor, Dr. Hunt. P. Mem. at 13. On November 26, 2019, Dr. Hunt offered the opinion that plaintiff could stand or walk for less than 30 minutes a day, sit for less than one hour a day, could rarely stoop, bend, kneel, and crouch, could never climb stairs. AR at 966. He further opined that plaintiff could constantly lift and carry 10 pounds, rarely lift and carry 20 pounds, and never lift and carry 50 pounds. AR at 967. The ALJ considered Dr. Hunt's opinion and stated it was given little weight because the limitations articulated were inconsistent with Dr. Hunt's own records. AR at 28-29. For example, on March 28, 2019, Dr. Hunt's records state that plaintiff's low back pain was "controlled with naproxen and duloxetine." AR at 644. Overall, the ALJ concluded that the record was more consistent with the finding that plaintiff was limited to light work, subject to the limitations provided in the RFC, citing medical records supporting the RFC determination and contradicting Dr. Hunt's opinion and plaintiff's own symptom testimony that he suffered from debilitating pain. AR at 28-29 (citing AR at 484, 609-610, 642, 1249).

      Plaintiff appears to suggest that because Dr. Hunt's medical report was more consistent with plaintiff's own testimony than were other medical records, the ALJ should not have discounted that testimony. P. Mem. at 13. But the ALJ discounted Dr. Hunt's report and plaintiff's symptom statements because they were

inconsistent with the objective medical record as a whole. The court will not second-guess the ALJ's determination that, taking all of the objective medical evidence into account, plaintiff's overall condition contradicted Dr. Hunt's medical records and plaintiff's claims of incapacity. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)).

Plaintiff also argues the ALJ failed to consider his testimony as consistent with the fact he has 70 percent service-related disability with the VA. P. Mem. at 13-14. However, the ALJ did consider this testimony and gave it little weight in light of the fundamental differences in the determination process used by the Social Security Administration and the VA and the lack of explanation of the rating in the medical records. AR at 21. Specifically, the VA does not assess a claimant's individual capabilities across functional areas, or determine whether a claimant can perform past relevant work or other work in the national economy. AR at 21.

Overall, although not all the reasons provided by the ALJ were clear and convincing, others were. As such, the ALJ did not err in discounting plaintiff's symptom testimony.

**B.     The ALJ Erred in Failing to Consider Plaintiff's Mental Impairments While Formulating the RFC**

Plaintiff also argues the ALJ erred in failing to consider plaintiff's nonsevere mental impairments in the RFC determination. P. Mem. at 14-20. Specifically, plaintiff contends the ALJ did not account for his PTSD or depression. P. Mem. at 15.

The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including evidence of nonsevere impairments. *Id*; *see* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not

'severe.'"). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Here, the ALJ found plaintiff's mental impairments to be nonsevere because they did not cause more than minimal limitation in his ability to perform basic mental work activities. AR at 19. In making this finding, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders, which are known as the "paragraph B" criteria. AR at 25. Overall, the ALJ found plaintiff's mental impairments caused mild limitations across each of the paragraph B criteria, and as such, the impairments were nonsevere. AR at 19-20.

The first area of function in which the ALJ must rate the plaintiff's degree of functional limitation is understanding, remembering, or applying information. 20 C.F.R. § 416.920a(c)(3). Plaintiff testified he had problems with his memory. AR at 50. For example, plaintiff stated that while watching television shows he is able to follow them, but cannot tell someone else about the show later. AR at 57. Though his wife reported she reminded him to take his blood pressure medication, plaintiff reported he did not need such reminders. AR at 257, 265. Plaintiff indicated he was able to handle his personal finances and pay bills. AR at 266. He also stated he followed written and spoken instructions well. AR at 56, 268. On balance, the ALJ found the plaintiff had mild limitation in this area. AR at 19.

The second functional area is interaction with others. 20 C.F.R. § 416.920a(c)(3). Plaintiff testified that he has problems being around people, especially crowds. AR at 50. He stated that he considers four people or more who are not his family to be a crowd. *Id.* In response to the question, "Do you have

1 any problems getting along with family, friends, neighbors, or others?" plaintiff
2 responded that according to his wife, he complains too much and needs more
3 patience. AR at 268. He stated he spends time at the neighborhood park and
4 community center. AR at 267. He said he got along well with authority figures
5 and "mostly everyone." AR at 269. He stated he uses the phone to gather
6 information about family members to create a family tree. AR at 267. He testified
7 that depending on how he was feeling, he may isolate from others. AR at 55. The
8 ALJ found mild limitation in this area. AR at 19.
9    The third area of function in which the ALJ rated plaintiff's degree of
10 limitation is concentration, persistence, or pace. 20 C.F.R. § 416.920a(c)(3).
11 Plaintiff stated that on a usual day he watched television, read, or worked on his
12 family tree. AR at 47-49, 267. He testified that he could follow along while
13 watching a television show. AR at 50. He reported he could count change, pay
14 bills, and handle his personal finances. AR at 266. He reported he had a normal
15 attention span and finished what he started. AR at 268. He reported he was able to
16 follow written and spoken instructions. AR at 56, 268. His wife reported that she
17 paid most of the bills because plaintiff lacked patience. AR at 259. He stated he
18 was able to read material of about three or four pages and tell his wife what was in
19 it. AR at 58. Based on this information, the ALJ found mild limitation in this area.
20 AR at 20.
21    The final functional area is adapting or managing oneself. 20 C.F.R.
22 § 416.920a(c)(3). Plaintiff reported he did not need reminders to take care of
23 personal needs or grooming. AR at 265. He reported he was able to prepare
24 simple meals. AR at 265. He reported he had the ability to drive and go out alone.
25 AR at 266. He reported he did not handle stress well but was able to handle
26 changes in routine. AR at 269. He testified he had received mental health
27 treatment and took medication for depression. AR at 50-51. He has 70 percent
28

disability through the VA for PTSD. AR at 39. He testified that he previously had visual hallucinations and that he still had nightmares. AR at 55. He testified his depression had improved, and while he still dealt with delusions he was able to calm the thoughts and not act upon them. AR at 56. Overall, as in the other three functional areas, the ALJ found mild limitation in the fourth area. AR at 20.

The ALJ also considered the medical evidence in the record that supported finding plaintiff's mental impairments were nonsevere. AR at 20-21. On July 13, 2015, a mental health examination showed plaintiff was cooperative, pleasant, in a fine mood, and had fair judgment. AR at 453. On March 8, 2016, psychiatric records describe him as not depressed or anxious, without hallucinations, and diagnosed him with depressive disorder, not otherwise specified. AR at 477-78. The same records show he was able to do serial sevens and serial threes, and spell the word "world" forward and backward. AR at 478. The examiner noted that plaintiff had no difficulty interacting with medical staff, no difficulty maintaining composure, and no difficulty maintaining focus. *Id.* Plaintiff had mild difficulty in maintaining social functioning and mild difficulty in concentration, persistence, and pace. *Id.* On March 13 and June 27, 2017, plaintiff was moderately depressed with evidence of paranoia or delusional thinking. AR at 816, 823. On August 28, 2017, records state he was moderately depressed without evidence of paranoia or delusional thinking. AR at 834. By October 4, 2019, records show he was feeling depressed and paranoid, and grieving a loss in the family, but denied hearing voices or seeing hallucinations despite still having nightmares. AR at 630.

Based on this evidence, the ALJ determined that plaintiff had only mild limitations in each of the four functional areas, which made his medically determinable mental impairments nonsevere. AR at 22 (citing 20 C.F.R. § 404.1520a(d)(1)). The ALJ then explained that the limitations identified in the paragraph B criteria "are not a residual functional capacity assessment but are used

to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Id.* She noted that the mental RFC assessment used at steps four and five requires a more detailed assessment. *Id.* The ALJ claimed that in her RFC analysis, she "considered all of the claimant's medically determinable impairments, including those that are not severe." AR at 19. The ALJ stated her RFC assessment reflected the degree of limitation she found as a result of her paragraph B analysis. AR at 22.

Despite the ALJ's assurances, the opinion does not include any discussion or analysis of how plaintiff's nonsevere mental impairments were factored into the RFC determination, and the RFC itself does not contain any nonexertional limitations. AR at 23. For this reason, it is not clear to the court that in determining plaintiff's RFC the ALJ actually considered the mild limitations across the functional areas found at step two.

Plaintiff argues this omission constitutes error, and the court agrees. P. Mem. at 16. Plaintiff cites *Hutton v. Astrue*, in which the Ninth Circuit considered whether the ALJ erred by failing to account for plaintiff's PTSD in his RFC analysis and in his hypotheticals to the vocational expert. 491 Fed. Appx. 850, 850 (9th Cir. 2012). At step two, based on a medical opinion, the ALJ determined that plaintiff had mild limitations in the area of concentration, persistence, or pace. *Id.* Because the ALJ found no limitations with respect to other functional areas, he classified plaintiff's PTSD as nonsevere. *Id.* In its analysis, the court first recited the well-established principle that ALJs must consider even non-severe impairments in formulating the claimant's RFC. *Id.* (citing 20 C.F.R. § 404.1545(a)(2)). The court found the ALJ failed to do so, and explained that "[t]o determine [plaintiff's] RFC properly, the ALJ was required to consider [his] physical impairments and the 'mild' limitations his PTSD caused with concentration, persistence, or pace." *Id.* at 850-51.

Since *Hutton*, multiple courts have remanded social security cases due to ALJs' failure to adequately address mild mental impairment limitations in formulating RFCs. *See Frary v. Comm'r of Soc. Sec.*, 2021 WL 5401495, at *10-12 (E.D. Cal. Nov. 17, 2021) (compiling case law finding error based on *Hutton*); *Kramer v. Astrue*, 2013 WL 256790, at *3 (C.D. Cal. Jan. 22, 2013) (following *Hutton* and reversing ALJ decision that failed to include mild mental limitations found at step two in the RFC determination); *Smith v. Colvin*, 2015 WL 9023486, at *8-9 (N.D. Cal. Dec. 16, 2015) (reversing where the record was "unclear" on whether the ALJ accounted for plaintiff's mild mental limitations in the RFC determination, despite ALJ's statement she did so); *Curtis v. Comm'r of Soc. Sec.*, 584 Fed. Appx. 390, 391 (9th Cir. 2014) (reversing where the court was "unable to determine on the record before us whether the ALJ adequately considered [plaintiff's] mental health limitations," despite the ALJ's claim to have considered both severe and nonsevere impairments in making the RFC determination).

Some courts have held that *Hutton* does not apply where the ALJ included at least some analysis of the plaintiff's mental impairments in his or her RFC evaluation in conjunction with the express incorporation of the step two findings. *Frary*, 2021 WL 5401495, at *17-19 (compiling cases that distinguished *Hutton*); *Sanguras v. Saul*, 2021 WL 973940, at *5 (E.D. Cal. Mar. 16, 2021); *George A. v. Berryhill*, 2019 WL 1875523, at *4-5 (C.D. Cal. Apr. 24, 2019). Even a brief discussion of the evidence at the RFC stage suffices, as long as it is preceded by a more detailed discussion at step two. *See Denney v. Saul*, 2019 WL 4076717, at *7-8 (E.D. Cal. Aug. 29, 2019) ("The ALJ did not err in addressing Plaintiff's mental impairments in great detail at step two and briefly at step four."); *Frary*, 2021 WL 5401495, at *18 (same). But "a hollow boilerplate incorporation of the paragraph B criteria within the RFC" discussion is not enough. *Frary*, 2021 WL 5401495, at *19; *Gates v. Berryhill*, 2017 WL 2174401, at *2-3 (C.D. Cal. May 16,

2017) ("[T]he 'consideration' requirement is met if the ALJ actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment. . . . It is not sufficient, however, for the ALJ to merely rely on boilerplate language." (cleaned up)). Here, the ALJ carefully analyzed the evidence of plaintiff's mental impairments at step two, but omitted any further analysis in formulating the RFC. The ALJ used boilerplate paragraph B language at step two, but failed to discuss mental impairments at all in making the RFC determination.

Defendant argues that any error is harmless since mild impairments generally do not limit one's ability to work, citing cases upholding ALJ decisions not to include such limitations in the RFC. D. Mem. at 10-11 (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007); *Stiller v. Colvin*, 2013 WL 3878950 (C.D. Cal. July 26, 2013)). While it is true that an ALJ need not include limitations in the RFC "if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work," the ALJ must still "actually review[] the record and specif[y] reasons supported by substantial evidence for not including the non-severe impairment" in order to avoid committing legal error. *Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018) (citations omitted).

For these reasons, the court finds the ALJ erred in failing to explain in her RFC analysis why she chose not to include any functional limitations related to plaintiff's nonsevere mental impairments in the RFC. The court cannot determine whether the outcome at step five would be the same had the ALJ avoided this error.[2] *See Aida I. v. Saul*, 2020 WL 434319, at *4-5 (S.D. Cal. Jan. 28, 2020)

---

[2] Plaintiff argues the hypothetical he posed to the VE did account for his mental limitations, and notes that the VE answered that a person with such limitations would be unable to perform plaintiff's past relevant work. P. Mem. at 19; AR at 63. But as defendant notes, that hypothetical assumed the person in

17

("[T]he Court cannot determine how the VE would have testified had the specific mild functional limitations to which Dr. Nicholson had opined been included in the hypotheticals posed."). As such, the court cannot say this error was harmless.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a

---

question was limited to "reasoning level two." D. Mem. at 9-10; AR at 63. Because the record does not establish whether plaintiff was in fact limited to reasoning level two, the VE's answer to this hypothetical does not resolve the issue of how, if at all, consideration of plaintiff's mental impairments would have affected the RFC determination.

18

claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because it is not clear from the record the ALJ would be required to find plaintiff disabled if all the evidence were properly considered. On remand, the ALJ shall reassess plaintiff's RFC, including assessing any warranted functional limitations relating to plaintiff's mental impairments or explaining the exclusion of any such limitations. The ALJ shall then proceed through steps four and five to determine what work, if any, plaintiff was capable of performing during the relevant period.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 26, 2022

SHERI PYM
United States Magistrate Judge